## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEIL N. PRICE,                          :        No. 3:09cv433
                 **Plaintiff**         :
                                :        **(Judge Munley)**
                                :
          **v.**                               :
                                :
**ELEXCO LAND SERVICES, INC.,**          :
**and SOUTHWESTERN ENERGY**              :
**PRODUCTION CO.,**                      :
                 **Defendants**       :

### MEMORANDUM

Before the court is the defendants' motion to dismiss the instant complaint. Having been briefed, this matter is ripe for disposition.

## BACKGROUND

This case arises out of a lease entered into between Neil Price, the Plaintiff, and Defendant Elexco Land Services, Inc. (Complaint (Doc. 1-3)) (hereinafter "Complt."). Plaintiff and Defendant Elexco Land Services, Inc. entered into a preprinted form "Paid Up Oil and Gas Lease" prepared by the defendant on October 6, 2007. (Id. at ¶ 5). The parties signed a memorandum of lease, which the defendant also prepared, on the same day. (Id. at ¶ 6). On May 19, 2008, the lease was assigned to Defendant Southwestern Energy Production Co. (Id. at ¶ 7). As incentive for signing the oil and gas lease, the defendants authorized its agents to tell the plaintiff

that the defendants would pay the plaintiff $100.00 per acre.  (Id. at ¶ 8).  The property in question consisted of approximately 41.68 acres, and the defendants thus offered Plaintiff Price $4,168.00 as consideration for the lease.  (Id. at ¶¶ 4, 9).  During the negotiations surrounding the lease, the defendants' agent told the plaintiff that in the event they did not sign, the defendants would place a well on neighboring land and "take Plaintiff's gas under the 'rule of capture' and pay Plaintiff's nothing." (Id. at ¶ 11).  Defendants also allegedly told the plaintiff that the lease conformed to Pennsylvania law in regard to royalty payments, but according to the plaintiff, it does not. (Id. at ¶ 12-15).

On February 9, 2009, plaintiffs filed a complaint in the Court of Common Pleas of Susquehanna County, Pennsylvania.  (Doc. 1-3).  Defendants filed a notice of removal with this court on March 9, 2009.  (Doc. 1-1)  Plaintiff Price's complaint raises two causes of action.  Count I alleges that the plaintiff was fraudulently induced by defendants' agent, who told them that the defendants would take gas under the plaintiff's land from neighboring parcels legally through the "rule of capture" if he did not sign.  Moreover, the plaintiff was also allegedly told that he would receive a royalty of one-eighth of the amount realized from sale of gas at the well, when the lease deducted certain costs

2

downstream from the wellhead before payment. (Complt. at ¶ 12-15). Count II seeks a declaration from the court voiding the lease as invalid under 58 P.S. § 402(8). The plaintiff alleges that the gas lease is invalid because it failed to provide for the minimum one-eighth royalty payment required under Pennsylvania law.

Defendants subsequently filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 2). Both sides briefed the issues, bringing the case to its present posture.

## JURISDICTION

The plaintiff is a citizen of Pennsylvania. (Complt. at ¶ 1). Defendant Elexco Land Services, Inc. is a Michigan corporation with its principal place of business in that state. (Notice of Removal (Doc. 1-1) at ¶ 3). Defendant Southwestern Energy Production Company is a Delaware corporation with its principal place of business in Texas. (Id. at ¶ 4). The amount in controversy exceeds $75,000. (Notice of Removal at ¶ 5). As such, this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The substantive law of Pennsylvania shall apply to the case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000), citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).

**STANDARD OF REVIEW**

This case is before the court pursuant to defendants' motion to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint is tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997).

**DISCUSSION**

The motion to dismiss attacks both counts of the plaintiff's complaint. We will discuss each count separately.

**I. Fraudulent Inducement**

Count I of the plaintiff's complaint advances a cause of action for fraudulent inducement. (Complt. at ¶ 9-16). This claim is made in regard to a statement made by the defendants' representative that the defendants would place a gas well on neighboring property and take gas under the

plaintiff's land under the "rule of capture" and pay Plaintiff Price nothing if he did not sign a lease.  (Id. at ¶ 11).  The defendants' agent also told the plaintiff when he signed, he would receive one-eighth of the amount realized from the sale of gas at the well.  The complaint avers: "[c]ontrary to Defendant's representations the lease provides for a royalty after the deduction for the costs of gathering, transportation, compression, fuel, line loss, and other post-production expenses incurred downstream from the wellhead."  (Id. at ¶ 13). Defendants argue that plaintiff' s fraudulent inducement claim should be dismissed as a matter of law. (Defendant's Brief in Support of their Motion to Dismiss, (Doc. 4) at 17, hereinafter "Defendant's Brief").  The defendants argue that the court should dismiss the fraudulent inducement claim since the statements made by the defendants' land agent were neither false nor fraudulent.  (Defendant's Reply Brief in Support of their Motion to Dismiss, (Doc. 7) at 13-14) (hereinafter "Defendant's Reply").  The defendants also contend that the plaintiff cannot base a fraudulent inducement claim on parol evidence. (Id.).

Under Pennsylvania law, fraudulent inducement may be found where a contracting party made false representations "that induced the complaining party to agree to the contract."  Toy v. Metropolitan Life Ins. Co., 593 Pa. 20,

928 A.2d 186, 205 (2007) (internal quotation marks and citations omitted).

The law provides that:

> "Fraud" consists of "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." Moser v. DeSetta, 527 Pa. 157, 163, 589 A.2d 679, 682 (1991). To demonstrate fraud, the plaintiff must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 538 Pa. 193, 207-08, 647 A.2d 882, 889 (1994).
>
> The essence of fraud is "a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim."

Martin v. Hale Products, Inc., 699 A.2d 1283, 1287-88 (Pa. Super. Ct.1997).

Defendants argue that the statements made by their representatives are insufficient to support a fraudulent inducement cause of action. The court disagrees. The plaintiffs claim that defendants' agent represented to them that if they did not agree to $100.00 per acre for the lease of their land, the defendants would place a well on neighboring lands and take the gas under the plaintiff's property in accord with the "rule of capture." (Complt. at ¶ 11). It

6

has been the law in Pennsylvania for over one hundred years that oil or gas under the plaintiff's land could be legally drained by well operations on a neighbors land "as minerals *feroe naturoe*," in common with the capture of wild animals.  <u>Westmoreland Gas Co. v. DeWitt</u>, 18 A. 724, 725 (Pa. 1889) ("Possession of the land, therefore, is not necessarily possession of the gas. If an adjoining, or even a distant, owner, drills his own land, and taps your gas, so that it comes into his well and under his control, it is no longer yours, but his."); <u>see also</u> <u>U.S. Steel Corp. v. Hoge</u>, 503 Pa. 140, 147 (1983).

On a motion to dismiss, however, we are unwilling to make a factual determination that the defendants could actually capture the gas deposits under the plaintiff's land from an adjunct parcel.  Moreover, it is not readily apparent that the defendants were in negotiations to place a well on neighboring lands.  We reasonably infer as such that the representations of the defendants' land agent could be equally true or false.  Since the "rule of capture" representation could be construed as an attempt to wrongly inform the plaintiff that the gas under his land could be removed by a neighboring well, the plaintiff's reliance on that claim in signing the lease appears reasonable.  On this instant motion, we make no legal determinations based on the defendants' intent or the plaintiff's injury.  However, to this point, the

plaintiff has stated a claim for fraudulent inducement in this matter.  <u>See</u>
<u>Martin</u>, 699 A. 2d 1287-88.

Regardless of whether these claims are sufficient for a fraudulent
inducement cause of action, defendants argue that the parol evidence rule
bars plaintiff from using this evidence outside the written contracts to make
out a fraudulent inducement claim.   (Defendants' Brief at 17-18).  They point
to <u>Toy</u> to argue that a fraudulent inducement claim may not be based on parol
evidence. (Defendants' Brief at 17-18).  The court agrees with the defendants
that the parol evidence rule bars evidence of "previous oral or written
negotiations or agreements involving the same subject matter as the contract
... to explain or vary the terms of the contract."  <u>Yocca v. Pittsburgh Steelers</u>
<u>Sports, Inc.</u>, 578 Pa. 479, 854 A.2d 425, 436-37 (2004).  However, the court
finds that defendants read <u>Toy</u> too broadly in arguing that a fraudulent
inducement claim cannot be supported by parol evidence.  The court in <u>Toy</u>
found that representations made prior to contract formation are considered
superseded and disclaimed when the parties have executed a fully integrated
written agreement.  928 A.2d at 206-07.

Of course, the mere existence of a contract does not make that contract
fully integrated; "for the parol evidence rule to apply, there must be a writing

that represents the parties' entire contract, and that where there exists such a writing is determined by assessing whether the writing appears to be a contract complete in itself, importing a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement." Id. at 204. The issue presented here, therefore, is whether the contract is fully integrated and the parol evidence rule applies to bar plaintiffs' fraudulent inducement claim.

We turn to Pennsylvania law to decide if an agreement is integrated so as to make the parol evidence rule applicable:

> To determine whether or not a writing is the parties' entire contract, the writing must be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement, it is conclusively presumed that the writing represents the whole engagement of the parties.... An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.

Yocca, 854 A.2d at 497-98 (internal quotation marks, brackets and citations omitted).

Here, the lease contract does not contain an integration clause which provides that the contract is the entire agreement of the parties. As such, the

court must look to the contract terms to see if the contract is complete in itself, eliminating any uncertainty as to the object and extent of the parties' engagement.  Complicating the issue is the fact that the parties have provided the court with several other signed agreements that augment the lease agreement.

The lease agreement the parties signed recites that "[I]n consideration of one ($1.00) dollar in hand paid and the covenants herein contained, Lessor hereby grants leases and lets exclusively to Lessee the following described land."  (Complt. Ex. D "Paid Up Oil and Gas Lease") (hereinafter "Lease"). The lease does not reference any other form of payment or other valuable consideration that makes up the agreement between the parties.  Defendant has submitted, however, a "consideration letter" or "payment letter" that is signed by both the plaintiff and defendant. This document contains the $4,168.00 that the parties agree defendants paid the plaintiff in exchange for the lease. (Doc. 7-3, pg. 7). That document does not contain an integration clause. Instead, it recites that Elexco Land Services promises to pay plaintiffs the more than $4,000 within sixty days of the writing. (Id.).  The document also states that "[t]his payment is for Bonus Consideration and rental period October 6th 2007 to October 5th 2012, covering 41.68 gross acres which

covers property described in the Oil and Gas lease executed this day." (Id.).

Defendants argue that it is appropriate that the separate writings be considered together. We agree with this proposition, but it is not determinative of this issue. The law provides that:

> It is a general rule of law that where one contract refers to and incorporates the provisions of another both shall be construed together. The Pennsylvania cases indicate that even where there is no specific reference to a prior agreement or prior agreements, several contracts shall be interpreted as a whole and together.

Shehadi v. Northeastern Nat'l Bank, 378 A.2d 304, 306 (Pa. 1977) (citations omitted). See e.g, International Milling Co. v. Hachmeister, 110 A.2d 186, 191 (Pa. 1955); Kroblin Refrigerated Express, Inc. v. Pitterich, 805 F.2d 96, 107 (3d Cir.1986) ("It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties.") (citations omitted).

By themselves, neither document could constitute the complete agreement between the parties. The lease agreement never mentions the second document, and the second document refers to the lease agreement. Read together, however, the documents do not appear to constitute the entire agreement between the parties, as they do not mention essential terms of the financial transaction. The lease agreement contains no mention of any agreement to provide more compensation for signing the lease than one

11

dollar and the royalty payments guaranteed in Section 3 of the document.

The document also does not reference any "bonus consideration" or describe

how such consideration would be calculated.  Clearly, however, the parties

agreed to some payment beyond that recited in the lease as consideration,

and the second writing establishes that such payment should occur.  That

document, however, does not define the term "bonus consideration," and

does not explain the exact purpose of the payment.  More important, the

document does not explain how the parties calculated the amount of this

payment, but instead merely lists the acres to which that payment applies.

Since "[t]he writing must be the entire contract between the parties if parol

[evidence] is to be excluded," the court concludes that at this juncture the

parol evidence rule should not apply and will not dismiss plaintiffs' fraudulent

inducement claim on that ground.  Fountain Hill Millwork Bldg. Supply Co. v.

Belzel, 587 A.2d 757, 760 (Pa. Super. Ct. 1991) (quoting Gianni v. Russel &

Co., 126 A. 791,792 (Pa. 1924).

     Because two contracts are at issue and, read together, they do not

establish the complete agreement of the parties, we find it inappropriate to

grant the defendants' motion to dismiss based on the parol evidence rule at

this time.  Discovery and evidence presented to the court may be helpful in

ultimately determining this issue. For example, it may be pertinent to the ruling to know when exactly the different agreements were signed, that is, whether they were executed at the same time, and if not, which one was entered into first and how much time elapsed between signing the agreements. Therefore, we will deny this argument at this time without prejudice to the defendant raising it again at the appropriate time.

## II. Validity of the Lease

The plaintiff also seeks a declaration from the court that the signed lease is invalid under Pennsylvania law because it does not provide the minimum royalty required by statute. (Complt. at ¶ 18-26). Defendants move to dismiss this count insisting that the lease comports with Pennsylvania law.

At question in this dispute is the provision of the lease that provides for royalty payments. That provision provides:

> 3. Royalty Payment. For all Oil and Gas Substances that are produced and sold from the leased premises, Lessor shall receive as its royalty one eighth (1/8th) of the sales proceeds actually received by Lessee from the sale of such production, less this same percentage share of all Post Production Costs, as defined below, and this same percentage share of all production, severance and ad valorem taxes. As used in this provision, Post Production Costs shall mean (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from

and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing and transportation costs incurred in connection with the sale of such production.

(Lease at ¶ 3).

The dispute here centers on whether this lease meets Pennsylvania statutory requirements that a gas lease provide the landowner a minimum royalty. Under the Pennsylvania Statutes section titled "Oil and Gas Leases," a lease conveying rights to remove or recover oil or natural gas is invalid unless it guarantees that the lessor receives at least one-eighth (1/8th) royalty of all oil or natural gas recovered or removed. 58 P.S. § 33.[1]

In the instant case, the lease provides for a royalty of one-eighth of the amount realized from the sale of gas produced from the well, less one-eighth of the post-production costs and one-eighth of the taxes incurred on the gas. (Lease at ¶ 3). The lease defines "post-production costs" as "(i) all losses of

_____

[1]Specifically, the law provides:

A lease or other such agreement conveying the right to remove or recover oil, natural gas or gas of any other designation from lessor to lessee shall not be valid if such lease does not guarantee the Lessor at least one-eighth royalty of all oil, natural gas or gas of other designations removed or recovered from the subject real property.

58 P.S. § 33.

produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing and transportation costs incurred in connection with the sale of such production." (Id.).  Plaintiff Price argues that because the lease calls for the subtraction of certain costs from the royalty, the lease does not comply with Pennsylvania law.  The defendants argue that the royalty provision of the lease is the standard in the industry and provides all that is required by Pennsylvania law. (Defendants' Brief at 9).

A plain reading of the statute supports the plaintiff's position.  The statute calls for a guaranteed one-eighth royalty and does not provide for the subtraction of any costs.  In their briefs, however, the defendants argue that the term "royalty" from the statute should be construed to allow for the deduction of post-production costs.  (Id. at 9-12). The defendants insist that industry standards and practices in gas-producing states, as well as case-law from Pennsylvania and other jurisdictions, establish that a lessor receives a full 1/8 royalty even after the costs mentioned in the lease here in question are subtracted.  (Id. at 7-8).  The plaintiff's claims, as the defendants assert,

ignore the standard industry practice.[2]  The question here is thus how "royalty" should be interpreted.

With regard to statutory construction of terms, Pennsylvania law provides: "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; <u>but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.</u>" 1 PA. CONS. STAT. § 1903(a) (emphasis added); <u>Coleman v. W.C.A.B.</u>, 577 Pa. 38, 842 A.2d 349, 353 (Pa. 2004) ("Generally, words and phrases are construed according to their common usage, and technical words and phrases that have acquired peculiar and appropriate meaning are accorded that meaning.").

---

[2]  The Court of Common Pleas of Susquehanna County Pennsylvania recently ruled on a similar issue involving the term "royalty" in a gas lease. (<u>See</u> <u>Kilmer v. Exleco</u>, No.2008-57, (Susquehanna County Court of Common Pleas, March 16, 2009)). The lease in that case called for the subtraction of post-production costs from the one-eighth royalty. (<u>Id.</u> at 2). The lessees asserted that the lease was invalid as it did not provide the minimum mandatory one-eighth royalty. (<u>Id.</u>). The court found that on its face, the royalty statute "does not prohibit the inclusion of 'post production' costs to calculate the one-eighth royalty." (<u>Id.</u> at 3). Therefore, the parties were free to negotiate the calculation of the royalty. (<u>Id.</u>). We respectfully disagree with the Kilmer analysis. The issue presented is whether the mandatory one-eighth royalty is achieved if post-production costs are deducted before payment. To make such a determination, it is necessary to construe the term "royalty" as used in the statute. We are not convinced that merely because the statute is silent on whether post-production costs can be deducted means that such costs can in fact be legally deducted from the royalty.

Defendants urge us to find that "royalty" has developed peculiar meaning in the oil and gas industry, thus we should apply that meaning as opposed to the common and approved usage of the term. Defendants' position is that the "universally accepted meaning of 'royalty' in the oil-and-gas industry. . . is a share of the oil or gas (or the value of it) without deducting the costs of 'production.'" (Id. at 9). Thus, if the lessee drills a well and finds no oil or gas, the loss is on the lessee. (Id. at 12). Defendants distinguish the costs of actually bringing the gas to the surface from the costs incurred after the gas leaves the wellhead. They claim that these costs are not involved in determining the 'royalty'. Such costs, as set forth in the lease, include: "all gathering, dehydration, compression, treatment, processing, marketing and transportation [.]" (Lease ¶ 3). Under defendants' definition of the term, "royalty" means the proceeds from the sale of the gas after all the costs of production have been paid by the gas company. The allocation of post-production expenses is separate and is determined by other provisions in the lease. (Id. at 12-13).

The plaintiff, however, points out that not all jurisdictions follow the definition of "royalty" that defendant proposes. (Plaintiff's Brief in Opposition of Defendants' Motion to Dismiss at 5) (hereinafter "Plaintiff's Brief"). Several

jurisdictions determine the royalty based upon the "First Marketable Product

Doctrine."   Under this doctrine, so-called "post-production costs" should not

be deducted from a royalty payment.  The Pennsylvania Supreme Court

recognized this theory in a decision that is over one hundred years old, but

evidently still good law. See Iams v. Carnegie Natural Gas Co., 194 Pa. 72,

45 A. 54 (1899).

In fact, the cases cited by the defendant recognize that two schools of

thought exist.  In Garman v. Conoco, Inc., 886 P.2d 652, 657 (Colo.1994), the

Colorado Supreme Court explained as follows:

> No consensus exists regarding the allocation of expenses
> incurred after the discovery of gas.... Two lines of cases
> have developed in the oil producing states based upon
> differing views of when production is established and a
> royalty interest accrues. Texas and Louisiana have
> adopted the rule that nonoperating interests must bear
> their proportionate share of costs incurred after gas is
> severed at the wellhead.  See, e.g., Dancinger Oil &
> Refineries v. Hamill Drilling Co., 141 Tex. 153, 171
> S.W.2d 321 (Tex.1943); Martin v. Glass, 571 F.Supp.
> 1406, 1415 (N.D.Tex.1983) ("Under the law of Texas, gas
> is 'produced' when it is severed from the land at the
> wellhead."), aff'd 736 F.2d 1524 (5th Cir.1984); see also
> Merritt v. Southwestern Elec. Power Co., 499 So.2d 210
> (La.Ct.App.1986) (under Louisiana's reconstruction
> approach royalty payments are calculated by deducting
> costs incurred after gas reaches the wellhead).... In
> Kansas and Oklahoma a contrary rule has developed
> based on an operator's implied duty to market gas
> produced under an oil and gas lease. Wood v. TXO

Production Corp., 854 P.2d 880, 882 (Okla.1992) ("[T]he implied duty to market means a duty to get the product to the place of sale in marketable form."); Gilmore v. Superior Oil Company, 192 Kan. 388, 388 P.2d 602, 606 (1964) ("Kansas has always recognized the duty of the lessee under an oil and gas lease not only to find if there is oil and gas but to use reasonable diligence in finding a market for the product."). Wyoming has codified the marketability approach. The Federal government also requires that a lessee "place gas in marketable condition at no cost to the Federal Government...."30 C.F.R. § 206.153(i) (1993).

Arkansas and North Dakota have reached similar conclusions when considering lease royalty clauses which are silent as to allocation of post-production costs. A lease which provides for the lessor to receive "proceeds at the well for all gas" means gross proceeds when the lease is silent as to how post-production costs must be borne. Hanna Oil & Gas Co. v. Taylor, 297 Ark. 80, 759 S.W.2d 563, 565 (1988); see also West v. Alpar Resources, Inc., 298 N.W.2d 484, 491 (N.D.1980) (when the lease does not state otherwise lessors are entitled to royalty payments based on percentage of total proceeds received by the lessee, without deduction for costs).

Garman, 886 P.2d at 657-59 (internal footnotes omitted).

Because two different schools of thought exist with regard to the term "royalty" we will not conclude at this early stage in the litigation that the term is subject to a "peculiar" meaning under the rules of statutory construction. Furthermore, defendants' brief cites to treatises, law review articles, a document from the Pennsylvania Department of Agriculture, legislative history

and opinions from other jurisdictions. Many of these opinions deal with summary judgment motions and non-jury trials and construe the term "royalty" as used in a lease, not as statutory construction.[3] It would be premature for the court to dismiss the case at this point. The defendants have not established that the term "royalty" should be construed so as to allow for deduction of costs in the lease and the plaintiff has not established that the term should not be so construed. Although they claim that this is the "industry practice" the plaintiffs have pointed out that not all jurisdictions follow this practice. To make a final determination on this issue we have to examine documents outside of the pleadings, which we will not do on a motion to dismiss.[4] Thus, the motion will be denied.

**CONCLUSION**

For the reasons stated above, the court will deny the defendants' motion to dismiss. An appropriate order follows.

_____

[3] See, e.g., Heritage Resources, Inc. v. Nationsbank, 939 S.W.2d 118 (Tex.1996) (which is an appeal of a partial summary judgment and a trial and is relied upon by defendant)

[4] We find it appropriate to deny the motion to dismiss with regard to the royalty as we are denying the motion to dismiss on the other claim in the complaint. This case will have to move forward regardless.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NEIL N. PRICE,** | : | **No. 3:09cv433** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **EXLECO LAND SERVICES, INC.,** | : | |
| **and SOUTHWESTERN ENERGY** | : | |
| **PRODUCTION CO.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 9th  day of July 2009, Defendants' Motion to

Dismiss the Complaint (Doc. 2) is hereby **DENIED.**

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**